THOMAS LANGONE *vs.* ROSARIO L. LATTUCA. November 12, 1985. *Contract,* Construction of contract, Sale of real estate.

The plaintiff Langone, as seller, sued for specific performance of a contract for the purchase and sale of land in the town of Westborough, and was met by an "answer and counterclaim" in which the defendant alleged sundry justifications for not performing the contract. After trial, a judge of the Superior Court entered judgment dismissing the counterclaim[1] and enforcing the contract to the extent of the defendant's duty to construct a certain road, which was commuted into a dollar amount representing the estimated cost of the construction ($26,000 plus interest).

The case comes down largely to an interpretation of the contract, which is confused and opaque. Interpretation is made the more difficult because the contract appears to have been an episode in an extended relationship between the parties. (A hint of this is seen at note 5, *infra.*) If we knew the details of the relationship, we might better understand the contract; but the record is unrevealing. On this appeal, the defendant urges that there was mutual mistake, but that thought was not developed below, and comes

---

[1] There was a general failure of proof of such allegations as that the plaintiff with fraudulent intent entered into the contract knowing that he could not deliver a "recordable" title. See also note 2, *infra.*

too late. And if reformation was in the cards, they were not played.[2] So, like the trial judge, we are remitted mostly to the contract, and we reach the same result he did.

On the date of the contract, May 19, 1981, Langone owned three parcels, A,[3] B, and C. Below parcel A was a lot which Langone had evidently sold to Lattuca and upon which Lattuca operated a Burger King restaurant. Parcel B was adjacent to and easterly of the Burger King lot, and parcel C was adjacent to and easterly of B. By deed of February 24, 1981, R & R Massachusetts Development Corporation (in whose name Lattuca seems to have held his lot) had granted to Langone a right of way over the northerly margin of its property.

By the May 19, 1981, contract in suit, Langone agreed to sell and Lattuca to buy parcel B, Langone reserving, however, a right of way in the northerly border of parcel B, to serve as a continuation of the right of way previously granted by R & R. In addition, Langone granted Lattuca an option to buy his "remaining land" or either of the constituent parcels A and C. The contract price which Lattuca undertook to pay was $30,500; the price for the "remaining land" would be $160,000, with lesser prices set in case only parcel A or parcel C was purchased under the option.

Lattuca undertook to construct a road on Langone's right of way on Lattuca's property, as follows. (1) In case Langone found anyone who "might be interested" in buying the "remaining land," then, upon notice, Lattuca was to build the road with specifications as to the kind of fill to be used, and so forth. (2) The contract was stated to be "contingent" on Lattuca's obtaining all permits to operate a gas station on parcel B. If permits were not granted, Lattuca might, but would not be required, to buy parcel B. But in case Lattuca was denied a permit or withdrew his application for a permit and failed to buy parcel B, he agreed to build the road.

We need mention that the contract referred to a 1978 lease between Langone and Lattuca and stated that this would be cancelled without further recourse by either party "in the event of the consummation of [the contract in suit]," or in case Lattuca "fails to obtain permits to operate a gas station and does not wish to purchase parcel 'B'."[4] A tie-in with the duty to build the road was suggested in the pleadings.[5]

---

[2] One of the prayers of the counterclaim sought reformation, but no evidence was offered to support it.

[3] We call the parcel "A" although it is only fitfully called that in the record. The others owned by Langone are regularly referred to as "B" and "C".

[4] There was a further statement at this point affirming that the February 24, 1981, deed from R & R was not subject to any contingency as to Lattuca's obtaining permits to operate a gas station.

[5] In his counterclaim, Lattuca said he had paid Langone $20,000 — $10,429.65 in final payment under the lease and the balance as a deposit for the purchase of parcel B. In his reply to the counterclaim, Langone said he had recovered a judgment for $10,429.65 against Lattuca under the lease, and, as part of the consideration for

Five hundred dollars was stated to have been paid on the date of the contract as a "non-refundable deposit," the balance (evidently $30,000) to be paid on delivery of the deed (to parcel B).

Following execution of the contract, it turned out that the lot was "unbuildable" because its frontage (on Route 9) was insufficient under the town's zoning by-law. Lattuca might have exercised his option to buy parcel C, in which event the frontage could have been pieced out. Lattuca, however, did not exercise his option. A variance could have been sought, and there was some dispute about whether Langone would have been cooperative; but the trial judge held that a variance was out of reach under the law, and could not have been secured.

Langone demanded that Lattuca build the road and, as noted, the judgment requires Lattuca to give an equivalent in money. It may be argued, plausibly, that, as a gas station project passed from the picture, the whole contract, including any obligation to build a road, collapsed by virtue of the "contingency" clause.[6] Probably there was no life left in the clause mentioned under (1) above: as Lattuca suggested, apart from all else, that clause can be read to contemplate a situation where Lattuca bought parcel B, but did not buy parcel A or C, and Langone managed to find a prospective purchaser for A and C: it would then be expedient for Langone to be in a position to connect C through the right of way in B, and, by means of the road on the right of way granted by R & R, to reach A (ending in Lyman Street in the west). There is no intimation that an interested purchaser had been found. Clause (2) is a different matter. This, on its face, fastens an obligation on Lattuca to build a road even if the gas station project should fail, as it did. In that event the contingency provision would, indeed, relieve Lattuca of any duty to buy parcel B; however — as we take the judge to have ruled — the duty under clause (2) survived and continued according to its literal meaning.

We cannot be certain that the conclusion reached makes good business sense as between the parties.[7] Yet if literalism was to be overcome, it was up to Lattuca to supply the relevant background for the purpose, and this he failed to do.

*Judgment affirmed.*

*Francis G. Ermilio* for the plaintiff.
*Eileen D. Vodoklys & Steven Morte,* for the defendant, submitted a brief.

---

Lattuca's promise to build the road, Langone had agreed to accept a total of $20,000, thereupon forgoing further rents and cancelling the lease. There was no proof of either set of allegations.

[6] While the "contingency" clause spoke of lacking permits to operate a gas station, it could readily apply to an anterior inability to build.

[7] Compare note 5, *supra*.